UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                           :        Chapter 13

EDWARD P. GOODWIN                              :

        Debtor                                        :        Bankruptcy No. 07-10442bf

................................................

MEMORANDUM

................................................

        Presently before me are two contested matters.  First, the chapter 13 debtor, Mr. Edward P. Goodwin, seeks confirmation of his second amended chapter 13 plan dated August 21, 2007.  An objection to confirmation was filed by the United States, on behalf of its agency, the Internal Revenue Service.  The IRS contends that the debtor has failed to file federal income tax returns for the years ending December 31, 2000 and December 31, 2002, as required by 11 U.S.C. § 1308.  Such a failure would violate the provisions of 11 U.S.C. § 1325(a)(9), precluding confirmation.

        The chapter 13 trustee also opposes confirmation.  The trustee contends that the debtor's proposed plan is not feasible, as required by 11 U.S.C. § 1325(a)(6), because the debtor is four months delinquent in plan payments, and his proposed plan calls for significantly increased monthly payments to begin shortly.  The trustee also maintains that the debtor's proposed plan violates the provisions of section 1325(a)(4), in that creditors under the debtor's plan would receive less than their distributions in a chapter 7 liquidation.

        In addition to opposing confirmation, the trustee has filed a motion to convert this case to chapter 7.  Initially, the trustee filed a motion to dismiss this case due to the debtor's failure to tender all required plan payments, pursuant to 11 U.S.C. §

1307(c)(1) and (c)(4). Subsequently, the trustee filed his motion to convert, asserting the debtor has unreasonably delayed creditors under section 1307(c)(1), and it would be in the creditors' best interests to have the case converted.

At the hearing held on these two competing requests for relief—viz., confirmation of the debtor's second amended chapter 13 plan, or relief under section 1307(c), with the trustee advocating for conversion to chapter 7—only the debtor and the trustee appeared and were heard. No creditors, including the IRS, were present. A consolidated evidentiary record was made at that time.

The following relevant facts were proven.

I.

Mr. Goodwin filed his present bankruptcy case on January 25, 2007. It was his third chapter 13 bankruptcy filing since November 2004. Both prior cases, docketed as Bankr. Nos. 04-34730 and 05-19512, were dismissed upon motion of the chapter 13 trustee due to the debtor's failure to tender required plan payments. The docket entries also reflect that confirmation in both cases was denied.[1]

In this third case filed on January 25, 2007, the chapter 13 trustee agreed not to seek dismissal of the case as filed in bad faith, but only upon the debtor agreeing to

---

[1] I take judicial notice under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017) of the docket entries of this case, as well as the docket entries of the debtor's prior cases. See Maritime Elec. Co., Inc. v. United Jersey Bank, 959 F.2d 1194, 1200 n.3 (3d Cir. 1991); Levine v. Egidi, 1993 WL 69146, at *2 (N.D. Ill. 1993); In re Paolino, 1991 WL 284107, at *12 n.19 (Bankr. E.D. Pa. 1991); see generally In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

2

the entry of an order by consent, dated February 13, 2007, which would bar the debtor from filing future bankruptcy cases without prior leave of court, were this third chapter 13 case dismissed for any reason. See generally In re Casse, 198 F.3d 327 (2d Cir. 1999).

The debtor in this present case filed a prior motion seeking to extend the bankruptcy stay pursuant to 11 U.S.C. § 362(c)(3). In that earlier motion, he alleged as follows:

> 1. Movant is Edward Goodwin.
>
> 2. Debtor has filed two prior cases under Chapter 13 of the Code. The first was filed on November 3, 2004 and dismissed in June 2005. The second was filed on July 12, 2005 and dismissed on September 13, 2006.
>
> 3. The Debtor has significant equity in his residence. The real property is worth approximately $250,000 and the secured claims are approximately $118,000.
>
> 4. Debtor and his wife reside in the real property and it is necessary for an effective reorganization.
>
> 5. The Debtor's prior cases were dismissed as a result of the Debtor's non-filing of federal income tax returns.
>
> 6. Debtor has agreed to file all outstanding tax returns within 60 days of the filing of this case.
>
> 7. Circumstances have changed since the last filing because the Debtor's spouse has obtained employment and earns approximately $1,200 per month, on a net basis.
>
> 8. The additional income gives the Debtor the ability to fund a feasible plan.

Debtor's "Motion For Continuance Of The Automatic Stay Beyond the 30 Day Period Under 11 U.S.C. § 362," ¶¶ 1-8.

By order dated March 6, 2007, the debtor's motion under section 362(c)(3) was granted, subject to the debtor "fil[ing] 2003, 2004 and 2005 federal income tax

3

returns prior to the April 4, 2007 § 341 creditors' meeting. Failure to do so will result in the Chapter 13 Trustee filing a Motion to Convert Case to Chapter 7." The debtor was also "directed to file all outstanding state and federal income tax returns by May 15, 2007, the confirmation date. Failure to do so will result in the Chapter 13 Trustee filing a Motion to Convert Case to Chapter 7."

A confirmation hearing on the debtor's initial proposed plan, filed on January 25, 2007, was scheduled for May 15, 2007. On May 15, 2007, that confirmation hearing was postponed until June 19, 2007, with the consent of the debtor and trustee. Then on June 19, 2007, the confirmation hearing was postponed, by consent, to July 17, 2007.

On July 17, 2007, the debtor sought yet another postponement of the confirmation hearing. At that time, he was informed in open court that he would be given one final adjournment until September 25, 2007. He was further informed in open court that if he did not obtain confirmation on that date, he would not be granted leave to file any further chapter 13 plans. See 11 U.S.C. § 1307(c)(5). Thus, the debtor was aware that September 25, 2007—eight months after he had commenced his third bankruptcy case—was his last opportunity to obtain approval of a chapter 13 reorganization plan.

On August 13, 2007, he filed his first amended chapter 13 plan. On August 21, 2007, he filed his second amended chapter 13 plan. Under 11 U.S.C. § 1323(b), the second amended plan became the debtor's proposed reorganization plan to be considered at the confirmation hearing.

The second amended plan proposed by the debtor, Ex. T-1, contained the following material terms:

4

>   1. If the instant estate were liquidated under chapter 7 of the Bankruptcy Code, the allowed unsecured claimants would receive full payment.[2]
>
>   2. Under this plan the Debtors [*sic*] will provide for PRO RATA payment to unsecured nonpriority creditors.
>
>   \*\*\*
>
>   4. . . . The total plan payments are $68,000.00 including the Trustee's commission. The Debtors [*sic*] shall submit to the supervision and control of the trustee the following sums:
>
>   >   a. The first twelve (12) months of the Plan: $449 monthly;
>   >
>   >   b. During the next 48 months of the Plan: $1,305.

In addition to these terms, the debtor's plan proposed to pay secured mortgage creditors their prepetition arrearages while maintaining regular monthly mortgage payments, see 11 U.S.C. § 1322(b)(5), pay the priority claims of the IRS and the Commonwealth of Pennsylvania (estimated at $17,384.17 and $1,781.34 respectively), see 11 U.S.C. § 1322(a)(2) (requiring full payment of priority tax claims), and pay in full the claims of certain lien creditors (estimated to be owed a total of $42,000). Ex. T-1.[3]

By virtue of 28 U.S.C. § 586(e), a chapter 13 trustee is entitled to a commission, which amount is set by the Attorney General. That commission is identified

---

[2] This same provision is found in the debtor's first amended chapter 13 plan but not in his originally proposed plan.

[3] These estimates are consistent with the proofs of claims filed by secured and priority creditors. However, Ford Motor Credit filed a claim secured by the debtor's automobile in the amount of $7,605.16. The plan states that the debtor is current in car payments and does not propose to pay Ford from distributions made by the trustee. Ford has not objected to the debtor's plan nor filed any motion to terminate the stay. Thus, for confirmation purposes, I assume that the debtor is tendering monthly payments directly to Ford, without opposition from the trustee or this creditor.

5

at 7.2% for this case. Ex. T-2. If secured creditors are to receive about $42,000 under the debtor's proposed plan, and priority creditors receive about $19,000, and the trustee is entitled to a commission of $4,896, only about $2,104 ($68,000 minus $65,896) is left to be paid to unsecured creditors. The claims register, Ex. T-3, reflects six creditors asserting unsecured claims totaling in excess of $28,000.[4] Therefore, the debtor's plan would provide for roughly a 7.5% dividend to such creditors.

At the time of the confirmation hearing, the trustee offered in evidence a copy of the debtor's payment ledger, Exhibit T-2. This ledger reveals four payments of $449 tendered to the trustee. Id. The last payment was received on July 23, 2007. Pursuant to 11 U.S.C. § 1326(a), plan payments are to commence "not later than 30 days after the date of filing of the plan or the order for relief, whichever is earlier[.]" Therefore, the first plan payment of $449 was due February 25, 2007. As of September 25, 2007—the date of the confirmation hearing—the debtor should have tendered eight payments.[5] The proposed plan calls for the debtor to increase payments to $1,305 on February 2008. Ex. T-1.

The debtor currently is employed as a real estate agent and a limousine driver. His primary income source is the latter, from which he presently earns $6.60 per hour, plus tips and commissions. He described his summer earnings from driving as slow. His present weekly earnings average about $400 but he hopes his driving duties will increase in the near future and his weekly earnings will double.

---

[4] By virtue of section 502(a), a proof of claim is allowed unless an objection thereto has been filed. The docket entries do not reflect the filing of any claims objections.

[5] The debtor testified that he brought $550 with him to the hearing. Had this sum been tendered to the trustee, he would still be about $1,250 delinquent in plan payments.

He has acted as a real estate agent since 1964, but has not sold property as an agent recently and could not recall any 2006 income from real estate sales. He presently has one listing, which has an asking price of $695,000, and which has been on the market for four months without any acceptable offers. He estimated that it may be another four months before the property is sold. There were no offers pending at the time of the hearing. Were the property sold by him, he estimated that his commission could range from $20,000 to $40,000, depending upon whether other real estate agents were involved. He also hopes to act as an agent selling some unimproved land near his home in the future, if zoning approval is obtained.

The debtor owns his residence, located on Jasper Lane in Hatboro, Pennsylvania, jointly with his wife as tenants by the entireties. See Schedule A.[6] The debtor's schedules value this realty at $250,000, and he testified that this valuation was accurate. There are two mortgages on the realty. These creditors have filed claims asserting that about $99,200 is owed. Thus, the value of the realty exceeds the mortgage liens by about $150,000. In addition, the IRS and the Commonwealth assert secured claims totaling roughly $9,300. It is unclear whether these liens attach to the entire real property or only to the debtor's interest. See generally United States v. Craft, 535 U.S. 274 (2002). I also note that the debtor asserts on Schedule F that all unsecured creditors hold a claim against him only. He lists no joint creditors.

---

[6]I take judicial notice of the debtor's bankruptcy schedules. See In re Indian Palms Associates, Ltd., 61 F.3d 197 (3d Cir. 1995).

Finally, the debtor testified that he had filed the two tax returns alleged by the IRS to be delinquent in the creditor's objection to confirmation. The IRS, not being present at the hearing, offered no evidence to the contrary.

II.

A.

The debtor has the ultimate burden of persuasion that his proposed chapter 13 plan meets the statutory requirements for confirmation. See, e.g., In re Hill, 268 B.R. 548, 552 (B.A.P. 9th Cir. 2001) ("The debtor, as the chapter 13 plan proponent, has the burden of proof on all elements of plan confirmation."); In re Heath, 182 B.R. 557, 560 (B.A.P. 9th Cir. 1995) ("In general, the debtor carries the burden of proving, by a preponderance of the evidence, that the plan complies with the statutory requirements of confirmation."); In re Weisser, 190 B.R. 453, 454 (Bankr. M.D. Fla. 1995); In re Norwood, 178 B.R. 683, 687 (Bankr. E.D. Pa. 1995); see also In re Ziegler, 88 B.R. 67, 69 (Bankr. E.D. Pa. 1988). While this burden is lessened when the chapter 13 trustee recommends confirmation, see In re Hines, 723 F.2d 333 (3d Cir. 1983), the trustee has made no such recommendation in this instance.

The chapter 13 trustee has raised two objections to confirmation of the debtor's proposed second amended plan. First, he contends that the debtor's plan fails to meet the confirmation requirement found in section 1325(a)(4), referred to as the "best interest of creditors test." In essence, a chapter 13 plan must provide unsecured creditors

with a dividend at least equal to what those creditors would receive in a chapter 7 liquidation. See generally In re Solomon, 67 F.3d 1128, 1132 (4th Cir. 1995); In re Nevins, 2005 WL 984182, at *4 (Bankr. E.D. Pa. 2005). As noted above, the debtor's proposed second amended plan would pay unsecured creditors about $2,104. The trustee argues that, with at least $140,000 in equity in the home (the value of the property, minus mortgage balances and tax liens), unsecured creditors would receive much more in a chapter 7 liquidation.

Both the trustee and the debtor have provided competing calculations of the estimated dividends that unsecured creditors would receive if Mr. Goodwin had filed a chapter 7 case and his non-exempt assets were liquidated by the trustee. The debtor contends that unsecured creditors would receive only $1,000 in a chapter 7 liquidation: less than the $2,104 his plan would provide. In so contending, the debtor does not address his representation in the proposed second amended plan, for which he is seeking court approval, which states expressly that allowed unsecured claims would be paid in full in a chapter 7 liquidation.[7]

A confirmed plan is binding upon the debtor and creditors, 11 U.S.C. § 1327(a), and is construed as though it were a contract between those parties. See In re Shenango Group Inc., 2007 WL 2505585 (3d Cir. 2007) ("In construing a confirmed plan of reorganization, we apply contract principles."). The debtor implicitly posits that he can obtain approval of a plan with a representation that he now maintains is not accurate.

---

[7]The chapter 13 trustee also overlooks this plan statement in arguing that section 1325(a)(4) was violated.

Creditors of the debtor reviewing only this proposed second amended plan cannot readily determine that the debtor's representation of full payment in a chapter 7 case is inaccurate; nor can they easily determine the amount of dividend they would receive if this plan were confirmed. One needs to review the proof of claims docket, along with the proposed plan and the debtor's schedules to compute the expected dividend under the second amended plan and compare it to a chapter 7 liquidation analysis. It is highly unlikely that unsecured creditors would undertake such efforts.

Thus, it is possible that unsecured creditors did not oppose confirmation under the mistaken belief that their claims would be paid in full, even though the proposed plan also states that they would be paid "pro rata." An incorrect statement in a proposed chapter 13 plan that could have been relied upon by creditors may violate section 1325(a)(3)—a chapter 13 plan must be proposed in good faith to be confirmed. See, e.g., In re Cabral, 285 B.R. 563, 573 (B.A.P. 1st Cir. 2002) ("courts have articulated the following factors in analyzing whether a Chapter 13 plan has been filed in good faith: . . . whether she has made any misrepresentations"); In re Banks 248 B.R. 799, 803 (B.A.P. 8th Cir. 2000) (same).

Neither the chapter 13 trustee nor the objecting creditor clearly raised the issue whether the debtor's plan was filed in good faith under section 1325(a)(3). They raised different objections. And Fed. R. Bankr. P. 3015(f) states in part: "If no objection is timely filed, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."

As neither the trustee nor the debtor address this issue, I shall treat the issue of good faith under section 1325(a)(3) as not having been raised. I shall also accept

10

arguendo the debtor's implicit premise that I may approve a plan that contains a misstatement that may have been relied upon by creditors; and also assume arguendo that a chapter 13 plan proponent is free to undermine a plan representation at a confirmation hearing. Therefore, I shall consider only the express objections posed by the trustee: non-compliance with sections 1325(a)(4) and (a)(6).[8]

### III.

The simpler objection to confirmation concerns the trustee's challenge that the debtor's proposed plan does not comply with the provisions of section 1325(a)(6). The trustee contends that the debtor's proposed second amended plan is infeasible, given its terms and the debtor's failure to tender all plan payments due as of the confirmation hearing.

Section 1325(a)(6) requires that visionary or speculative chapter 13 plans not be approved. As stated in In re Fantasia, 211 B.R. 420, 423 (B.A.P. 1st Cir. 1997) (citations omitted):

> To satisfy feasibility, a debtor's plan must have a reasonable likelihood of success, i.e., that it is likely that the debtor will have the necessary resources to make all payments as directed by the plan. 11 U.S.C. § 1325(a)(6). The debtor carries the initial burden of showing that the plan is feasible. Before confirmation, the bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan.

---

[8] The IRS objection to confirmation was unproven.

See also In re Scott, 188 F.3d 509 (table), 1999 WL 644380, at *1 (6th Cir. 1999); In re Harris, 199 B.R. 434, 436 (Bankr. D.N.H. 1996) (feasibility requires that the proposed chapter 13 plan have a likelihood of success).[9]

Typically, a chapter 13 debtor meets his burden of demonstrating the viability of a chapter 13 plan based upon future income by showing a stable employment history, present employment, and a current income level sufficient to make proposed plan payments. See, e.g., In re Nottingham, 228 B.R. 316, 321 (Bankr. M.D. Fla. 1998). A few courts, however, have found a chapter 13 plan feasible when the debtor is presently unemployed but has demonstrated a sufficient likelihood of re-employment. See, e.g., In re Compton, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988); In re Van Gordon, 69 B.R. 545, 547 (Bankr. D. Mont. 1987) (the plan was found feasible because "the evidence of the Debtor is that his employment prospects after termination of his present job are good, and will provide him with the same level of income he has received in the past"). Compare In re Anderson, 21 B.R. 443 (Bankr. N.D. Ga. 1981) (unemployed debtor was unable to show he could supply regular and stable income).

Similarly, if a chapter 13 debtor is self-employed, the feasibility of his proposed plan will be based upon his earnings history (preferably corroborated by federal income tax returns), his current income and the likely stability of that income in the future. If he has insufficient income at the time of the confirmation hearing, the debtor

---

[9] A similar feasibility provision is found in chapter 11 cases at 11 U.S.C. § 1129(a)(11). Courts have noted that the purpose of the chapter 11 feasibility requirement is to prevent confirmation of "visionary schemes." See Matter of Pizza of Hawaii, Inc., 761 F.2d 1374, 1382 (9th Cir. 1985); 7 Collier on Bankruptcy, ¶ 1129.03[11] (15th ed. rev. 2007). While feasibility does not require that compliance with plan terms be guaranteed, there must be a "reasonable prospect of success" and the plan must be "workable." 7 Collier on Bankruptcy, ¶ 1129.03[11], at 1129-74 to 74.1.

has the burden to demonstrate a sufficient likelihood that adequate self-employment income is imminent. Cf. In re Lippolis, 228 B.R. 106, 114 (E.D. Pa. 1998) (feasibility may be established where the debtor can demonstrate a "reasonable likelihood" that his future income will increase or his expenses will decrease).

Here, the debtor offers no corroboration for his ability to tender to the chapter 13 trustee within four months more than $1,300, almost triple his present monthly plan payments of $449. Other than his testimony that his income from limousine driving and real estate sales will soon increase, he offers no history of such income, no signed agreements, no tax returns, no pay stubs, no corroborative testimony. On the contrary, the evidence reflects that he has had difficulty tendering the smaller monthly amount: missing four of the first eight plan payments. He also had two prior unsuccessful chapter 13 cases, making somewhat higher his evidentiary burden to demonstrate plan feasibility in this case . See, e.g., In re Yeager, 2004 WL 422049, at *3 (Bankr. E.D. Pa. 2004) ("[A] plan proposed after multiple bankruptcy filings over a period of years must have a higher degree of certainty than the one proposed here."); In re Newton, 217 B.R. 1002, 1004 (Bankr. S.D. Ohio 1997) (same).

Thus, I cannot find credible the debtor's unsupported oral assurance that he will be able to tender more than $1,300 in monthly plan payments to the chapter 13 trustee, while maintaining his regular monthly mortgage payments, his car payment, and his other recurring expenses. See In re Patton, 2007 WL 853742, at *5 (Bankr. E.D. Pa. 2007) (finding not credible uncorroborated testimony of increased income and thus finding the debtor's proposed chapter 13 plan infeasible); In re Haskell, 252 B.R. 236, 244 (Bankr. M.D. Fla. 2000) (chapter 13 confirmation was denied when debtor was

13

delinquent in plan payments, debtor's testimony regarding future income was not persuasive, and two prior chapter 13 cases had been dismissed). Accordingly, the debtor here has not met the confirmation requirement found in section 1325(a)(6). See, e.g., In re Scott, 1999 WL 644380, at *1 ("Without a credible basis to find that he could pay the $100 per month that his plan required, the plan could not be confirmed."); Scarborough v. Chase Manhattan Mortg. Corp., 2006 WL 1050287, at *3 (E.D. Pa. 2006) ("Debtor failed to show that her income was adequate to make the payments set forth in her sixth amended Chapter 13 confirmation plan and seventh amended Chapter 13 confirmation plan."); In re Beene, 354 B.R. 856, 862 (Bankr. W.D. Ark. 2006); In re Cherry, 84 B.R. 134, 139 (Bankr. N.D. Ill. 1988); In re Gale, 8 B.R. 960, 962 (Bankr. D. Md. 1981) (confirmation of chapter 13 plan is denied because future plan payments were "conjectural at best.").

The debtor's failure to meet his burden under section 1325(a)(6) requires that confirmation of his second amended plan be denied.[10]

IV.

In July 2007, I informed the debtor in open court that if confirmation were denied he would not be given a further opportunity to amend his chapter 13 plan and again seek confirmation. See generally 11 U.S.C. § 1307(c)(5). This instruction was based upon the existence of two prior failed reorganization efforts plus the length of

---

[10]Thus, I need not reach the trustee's objection that the debtor's proposed plan also fails to comply with section 1325(a)(4).

time, caused by repeated postponements, of the confirmation hearing in this third case. As the debtor failed to meet his burden to gain approval of his latest amended plan, the issue posed by section 1307(c) is whether to dismiss or convert the case to chapter 7, depending upon the best interests of creditors and the bankruptcy estate. On this issue, a bankruptcy court has considerable discretion. See, e.g., In re Jacono, 360 B.R. 84, 88 n.8 (Bankr. E.D. Pa. 2006).

The chapter 13 trustee asserts that conversion to chapter 7 would be in the best interests of the debtor's creditors and his estate. He maintains that if this case were converted, unsecured creditors would receive a significant distribution from the non-exempt equity in the debtor's residence. See, e.g., In re Lindsey, 183 B.R. 624, 629 (Bankr. D. Idaho 1995) (chapter 13 case converted to chapter 7 after denial of confirmation because creditors would receive a "substantial" distribution). Conversely, if there would be little or no dividends to unsecured creditors in a chapter 7 case, conversion may not be appropriate. See In re Jacono, 360 B.R. at 88 n.8.

As suggested earlier, the trustee's assertion that the debtor's creditors would benefit from conversion to chapter 7 is based upon the considerable equity in the debtor's residence. However, as also noted earlier, this residence is owned by the entireties with a non-debtor spouse. A chapter 7 trustee might only be able to sell the realty over the opposition of the non-debtor spouse if the trustee could meet the requirements found in 11 U.S.C. § 363(h). See In re Sturman, 222 B.R. 694, 708 (Bankr. S.D.N.Y. 1998). This would likely require the engagement of counsel, with the estate incurring counsel fees associated with section 363(h) litigation. See, e.g., In re Romano, 2007 WL 3027353 (Bankr. E.D. Pa. Oct. 11, 2007). Moreover, even if the chapter 7

trustee prevailed under section 363(h), it is not clear that unsecured creditors would benefit at all.

In Napotnik v. Equibank and Parkvale Savings Ass'n, 679 F.2d 316, 318 (3d Cir. 1982), the Third Circuit Court of Appeals held, in construing former section 522(b)(2)(B), now section 522(b)(3): "Since property law in general and the law of co-tenancies in particular are creatures of state law, the 'applicable nonbankruptcy law' is the applicable Pennsylvania law of tenancy by the entirety." After analyzing Pennsylvania's common law concerning entireties property, the Third Circuit concluded that, as joint creditors may execute upon entireties property, when one spouse files for bankruptcy that spouse may not claim as exempt from any joint creditors his interest in entireties property. Id. at 321-22.

Thus, when one spouse only files for bankruptcy and there are only joint creditors, entireties property cannot be claimed as exempt and a chapter 7 trustee can administer the property. See Napotnik. Conversely, when only one spouse files a bankruptcy petition and there are no joint creditors, the debtor's interest in entireties property may be claimed as exempt under section 522(b)(3)(B). See, e.g., In re Knapp, 285 B.R. 176 (Bankr. M.D.N.C. 2002); In re Koesling, 210 B.R. 487 (Bankr. N.D. Fla. 1997); In re Pernus, 143 B.R. 856, 858-59 (Bankr. N.D. Ohio 1992). In that instance, a chapter 7 trustee cannot administer that asset. And when one spouse files a voluntary petition in bankruptcy and owns property by the entireties, and there are both joint and individual debts, the entireties property is not exempt and may be administered, but for the benefit of joint creditors only. See Sumy v. Schlossberg, 777 F.2d 921, 928 (4th Cir. 1985); In re Pepenella, 103 B.R. 299, 302 (M.D. Fla. 1988); In re Balber, 112 B.R. 6, 8

16

(Bankr. W.D. Pa. 1990); Matter of Cipa, 11 B.R. 968, 973 (Bankr. W.D. Pa. 1981); 4 Collier on Bankruptcy, ¶ 522.10[3], at 522-78.3 (15th ed. rev. 2007).

As I noted earlier, the debtor's bankruptcy Schedule F, disclosing his unsecured creditors, lists all of the debts as individual obligations of the debtor, not joint obligations of the debtor and the non-debtor spouse. If this disclosure is accurate (and there was no evidence to the contrary), the debtor may be able to prevent the chapter 7 trustee from selling his interest in real property, if he could demonstrate that only lien creditors would benefit and unsecured creditors would not receive any distribution from the sale of the debtor's interest in his residence, even if the trustee could prevail over the non-debtor under section 363(h).

Based upon the limited evidence presented, I conclude that conversion of this case to chapter 7 may only give rise to litigation expenses without yielding any measurable benefit to unsecured creditors. Moreover, under the terms of an earlier order in this case entered by consent, the debtor is barred from filing future bankruptcy cases without first obtaining court approval. Thus, with the case dismissed, the secured creditors, including the taxing authorities, will be free to exercise their non-bankruptcy law rights to execute upon their security interests.

Accordingly, the better exercise of discretion is to dismiss this chapter 13 case rather than convert it to chapter 7. An appropriate order shall be entered.

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re                                                              :         Chapter 13

EDWARD P. GOODWIN                                 :

    Debtor                                              :         Bankruptcy No. 07-10442

................................................

ORDER

................................................

AND NOW, this 2nd day of November 2007, for the reasons stated in the accompanying memorandum, it is hereby ordered that confirmation of the debtor's second amended chapter 13 plan, filed on August 21, 2007, is denied pursuant to 11 U.S.C. § 1325(a)(6).

It is further ordered, pursuant to 11 U.S.C. § 1307(c)(5), that this bankruptcy case is dismissed and the debtor is barred from filing any future bankruptcy cases, individually or jointly, without obtaining prior court approval. Such approval can be sought only upon motion, served upon the chapter 13 trustee and all creditors, utilizing the caption of this dismissed case.

The clerk of court shall serve a copy of this order upon all creditors. See Fed. R. Bankr. P. 2002(f)(2) [Interim].

_____
BRUCE FOX
United States Bankruptcy Judge

copies to:

Mr. Edward P. Goodwin
3770 Jasper Lane
Hatboro, PA 19040

Daniel T. McGrory, Esquire
Pizonka, Reilley, Bello & McGrory, P.C.
144 East DeKalb Pike, Suite 300
King of Prussia, PA 19406

William C. Miller, Esquire
Chapter 13 Trustee
111 S. Independence Mall, Suite 583
Philadelphia, PA 19106